**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AUTOMOBILE MECHANICS' LOCAL NO. 701, | ) | |
| UNION AND INDUSTRY PENSION FUND, | ) | |
| AUTOMOBILE MECHANICS' LOCAL NO. 701, | ) | Case No.: 1:26-cv-9634 |
| UNION AND INDUSTRY WELFARE FUND, and | ) | |
| AUTOMOBILE MECHANICS' LOCAL NO. 701 | ) | |
| DEFINED CONTRIBUTION 401(k) PLAN, | ) | Judge: |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Magistrate Judge: |
| vs. | ) | |
| | ) | |
| KINGDOM CHEVROLET INC., an Illinois | ) | |
| corporation, SOUTH CHICAGO DODGE | ) | |
| CHRYSLER JEEP, INC., an Illinois corporation, and | ) | |
| WESTERN AVENUE NISSAN, INC., an Illinois | ) | |
| corporation. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>COMPLAINT</u>**

NOW COME Plaintiffs, the AUTOMOBILE MECHANICS' LOCAL NO. 701, UNION

AND INDUSTRY PENSION FUND ("Pension Fund"), AUTOMOBILE MECHANICS' LOCAL

NO. 701, UNION AND INDUSTRY WELFARE FUND ("Welfare Fund"), and AUTOMOBILE

MECHANICS' LOCAL NO. 701 DEFINED CONTRIBUTION 401(k) PLAN ("401(k) Plan")

(collectively, the "Funds"), by and through their attorneys, JOHNSON & KROL, LLC,

complaining of the Defendants, KINGDOM CHEVROLET INC. ("Kingdom Chevrolet"),

SOUTH CHICAGO DODGE CHRYSLER JEEP, INC. ("South Chicago Dodge"), and

WESTERN AVENUE NISSAN, INC. ("Western Avenue Nissan") (collectively, the

"Dealerships"), and in support, allege as follows:

**<u>JURISDICTION AND VENUE</u>**

1.      This action arises under Sections 502 and 515 of the Employee Retirement Income Security

Act (hereinafter referred to as "ERISA"). 29 U.S.C. §§ 1132 and 1145. The Court has jurisdiction over the subject matter of this action pursuant to 29 U.S.C. §§ 1132(e)(1) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to Section 502(e)(2) of ERISA (29 U.S.C. § 1132(e)(2)) in that the Funds are administered in Burr Ridge, Illinois and pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in the Northern District of Illinois, Eastern Division.

## PARTIES

3. The Funds receive contributions and elective deferrals from numerous employers pursuant to various collective bargaining agreements between the employers and the Automobile Mechanics' Local 701, International Association of Machinists and Aerospace Workers, AFL-CIO, of Chicago and vicinity ("Union"), and therefore are multiemployer plans under 29 U.S.C. §1002.

4. Pursuant to Sections 502(a)(3) and 515 of ERISA (29 U.S.C. §§ 1132(a)(3) and 1145), the Funds are authorized to bring this action on behalf of their participants and beneficiaries to enforce a collective bargaining agreement.

5. The Dealerships are Illinois corporations that operated car dealerships on South Western Avenue in Chicago, Illinois.

6. Each of the Dealerships were owned by the Ruscitti family until they sold all of their operating assets on or about February 12, 2026.

7. The Dealerships are properly joined as Defendants because Plaintiffs' claims against them arise from the same series of transactions or occurrences and involve common questions of law and fact. Fed. R. Civ. P. 20(a)(2).

**FACTS COMMON TO ALL COUNTS**

8. Each of the Dealerships is bound to the NCDC Agreement negotiated between the New Car Dealer Committee and the Union in effect from September 26, 2021 through July 31, 2025. (A copy of the NCDC Agreement is attached as **Exhibit 1**).

9. On or about May 14, 2025, each of the Dealerships entered into a Contract Extension and Multi-Employer Consent Agreement ("Extension Agreement") with the Union wherein each of the Dealerships agreed to adopt the terms in Article 6, Article 11, Article 12, Article 27 and Appendix 1 of the Standard Automotive Agreement (the "SAA") in place between the Union and the Chicago Automobile Dealers Association ("CADA") for the remaining duration of the SAA (expiration March 29, 2026). (A copy of Kingdom Chevrolet's Extension Agreement is attached as **Exhibit 2**); (A copy of South Chicago Dodge's Extension Agreement is attached as **Exhibit 3**); (A copy of Western Avenue Nissan's Extension Agreement is attached as **Exhibit 4**); (A copy of the SAA is attached as **Exhibit 5**).

10. Each of the Dealerships is bound to Participation Agreements with the Pension Fund and Welfare Fund. (Copies of Kingdom Chevrolet's Participation Agreements are attached as **Exhibit 6**); (Copies of South Chicago Dodge's Participation Agreements are attached as **Exhibit 7**); (Copies of Western Avenue Nissan's Participation Agreements are attached as **Exhibit 8**).

11. Through the Participation Agreements, the Dealerships are bound to the Agreements and Declarations of Trust ("Trust Agreements") that established and administer the Pension Fund and Welfare Fund. (A copy of the Pension Fund's Trust Agreement is attached as **Exhibit 9**); (A copy of the Welfare Fund's Trust Agreement is attached as **Exhibit 10**).

12. Pursuant to the authority granted to them in the Trust Agreements, the Trustees of the Pension Fund and Welfare Fund adopted a Collection Policy and Payroll Audit Procedures ("Funds' Collection Policy"). (A copy of the Collection Policy is attached hereto as **Exhibit 11**).

13. Through the NCDC Agreement and the SAA (collectively the "CBAs"), the Dealerships are bound to the Agreement and Declaration of Trust that established and administers the 401(k) Plan (the "401(k) Plan Trust Agreement"). (A copy of the 401(k) Plan's Trust Agreement is attached as **Exhibit 12**).

14. Pursuant to the authority granted to them in the 401(k) Plan's Trust Agreement, the Trustees of the 401(k) Plan adopted a Collection Policy and Payroll Audit Procedures ("401(k) Plan's Collection Policy"). (A copy of the 401(k) Plan's Collection Policy is attached hereto as **Exhibit 13**).

15. Pursuant to the provisions of the CBAs, Participation Agreements, Trust Agreements, and the Funds' Collection Policy, the Dealerships are required to make monthly reports of the number of weeks worked by bargaining-unit employees and pay contributions to the Pension Fund and Welfare Fund for each week that a bargaining-unit employee performs any work at the negotiated rate set forth in the CBAs. (**Exhibits 1, 4, 6-8, & 11**).

16. The monthly reports and contributions are due to the Pension Fund and Welfare Fund on or before the tenth (10th) day of the calendar month following the calendar month during which the work was performed. (**Exhibits 1, 4, 9, & 10**).

17. Pursuant to 29 U.S.C. §1132(g)(2), the provisions of the CBAs, the Trust Agreements, and the Funds' Collection Policy, employers who fail to submit monthly reports and contributions to the Pension Fund and Welfare Fund on a timely basis are responsible for

the payment of liquidated damages equal to ten percent (10%) of the amount unpaid, plus interest at the rate of one percent (1%) per month, and any reasonable attorneys' fees and costs associated with collection of amounts owed. (**Exhibits 1, 4, & 11**).

18. Pursuant to the CBAs, 401(k) Plan Trust Agreement, and participant deferral election forms, the Dealerships are required to make authorized weekly pre-tax deductions from their enrolled employees' wages as an elective deferral to the 401(k) Plan in an amount elected by each employee. (**Exhibits 1, 4, & 12**).

19. The CBAs, 401(k) Plan's Trust Agreement, and the 401(k) Plan's Collection Policy further provide that elective deferrals shall be remitted to the 401(k) Plan no later than the fifteenth (15th) day of the month following the pay period for which the deductions are made. (**Exhibits 1, 4, 12, & 13**).

20. Pursuant to 29 U.S.C. §1132(g)(2), the 401(k) Plan's Trust Agreement, and the 401(k) Plan's Collection Policy, a failure to timely submit elective deferrals to the 401(k) Plan results in a one-time charge of ten percent (10%) liquidated damages for all delinquent elective deferrals, interest at a rate of one percent (1%) per month from the original due date until all outstanding elective deferrals are paid in full, and any reasonable attorney's fees and costs associated with collection of amounts owed. (**Exhibits 12 & 13**).

21. Part 1, Article VI, Section 5 of the Pension Fund's Trust Agreement and Part 1, Article VI, Section 5 of the Welfare Fund's Trust Agreement state as follows:

> The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its Employees, their social security numbers, the hours worked by each Employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may at any time have an audit made by an independent accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports.

(**Exhibits 9 & 10**).

22.     Article 6, Section 6.04 of the 401(k) Plan's Trust Agreement states as follows:

> The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its Employees, their social security numbers, the hours worked by each Employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may at any time have an audit made by an independent accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports.

(**Exhibit 12**).

23.     Following the sale of each Dealership's assets on or about February 12, 2026, the Dealerships failed to report and pay contributions to the Pension Fund and Welfare Fund for work performed in February 2026, failed to pay contributions attributable to vacation paid out at termination, and failed to report and transmit any 401(k) elective deferrals to the 401(k) Plan for work performed in February 2026.

24.     As a result, the Funds' independent auditors sought to conduct close-out payroll compliance audits of the Dealerships.  However, after multiple requests by the Funds' auditors and demands from the Funds' counsel, the Dealerships have refused to comply with the payroll compliance audits.

25.     Additionally, the 401(k) Plan has requested that each of the Dealerships complete and return the calendar year 2026 401(k) salary testing questionnaire/spreadsheet in order to conduct annually required discrimination testing of all participating employers. Notwithstanding several requests from the Fund Office and demands from the Funds' counsel, the Dealerships have refused to complete the 2026 401(k) salary testing questionnaire/spreadsheet.

**COUNT I**
**BREACH OF CONTRACT - KINGDOM CHEVROLET INC.**

26. Plaintiffs re-allege the allegations contained in Paragraphs 1-25 of this Complaint with the same force and effect as if fully set forth herein.

27. A payroll compliance audit of Kingdom Chevrolet's payroll books and records for the period of July 1, 2019 through December 31, 2024 revealed that Kingdom Chevrolet failed to transmit 401(k) elective deferrals it deducted from its bargaining-unit employees' wages to the 401(k) Plan in the principal amount of $457.42. As a result of these underpayments, Kingdom Chevrolet is liable for $45.74 in 401(k) liquidated damages and $252.63 in 401(k) interest through November 5, 2025 (interest continues to accrue). (A redacted copy of the payroll compliance audit is attached as **Exhibit 14**).

28. Despite multiple demands, Kingdom Chevrolet has refused to pay the outstanding deficiencies revealed by the July 1, 2019 through December 31, 2024 audit.

29. The Funds have sought to conduct a payroll compliance audit of Kingdom Chevrolet for the period of January 1, 2025 through its cessation of operations on or about February 12, 2026.

30. In addition, the Funds requested that Kingdom Chevrolet complete the 2026 401(k) salary-testing questionnaire/spreadsheet for its workforce.

31. Despite several demands, Kingdom Chevrolet has failed to produce all records requested by the Funds' auditor and has refused to return a completed 401(k) salary-testing questionnaire/spreadsheet.

32. Kingdom Chevrolet's refusal to pay the deficiencies revealed by the July 1, 2019 through December 31, 2024 audit and its refusal to provide records required to complete the close-

out audit and the 2026 401(k) salary-testing questionnaire/spreadsheet constitute breaches of the CBAs, Participation Agreements and Trust Agreements.

33.   Plaintiffs have been required to employ the undersigned counsel to collect the known audit deficiencies and to compel Kingdom Chevrolet's compliance with the payroll compliance audit and 401(k) salary testing.

34.   Kingdom Chevrolet is obligated to pay the reasonable attorneys' fees and court costs incurred by the Funds pursuant to the CBAs, their respective Trust Agreements, the Collection Policies, and 29 U.S.C. § 1132(g)(2)(D).

**WHEREFORE**, the Funds respectfully request that:

A.   Judgment be entered in favor of the Funds and against Kingdom Chevrolet for the $457.42 in 401(k) elective deferrals, along with the resulting $45.74 in 401(k) liquidated damages and $252.63 in 401(k) interest (plus additional interest that accrues), as revealed by the payroll compliance audit conducted for the period of July 1, 2019 through December 31, 2024;

B.   This Honorable Court enter an order requiring Kingdom Chevrolet to comply with a payroll compliance audit for the period of January 1, 2025 through its cessation of operations, including the production of the following records for that period:

1.   Payroll registers, earning cards and time cards;

2.   Quarterly Federal (Form 941) and Illinois (Form IL-941) payroll tax returns, as well as any other states reported to;

3.   Quarterly Illinois (Form UC-3/40) and annual Federal (Form 940) unemployment tax returns;

4. U.S. wage and tax statements - Forms W-2 and W-3;

5. U.S. information returns - Forms 1099 and 1096;

6. Cash disbursements journals or check register;

7. General ledgers;

8. Federal income tax returns - Forms 1120 or 1120S (Corporation) 1065 (Partnership) or 1040, Schedule C (Sole Proprietorship);

9. Invoices, cancelled checks, receipts, and other support for selected cash disbursements;

10. Other union benefit fund reporting reports;

11. Affiliated company records, if any;

12. Employee listings (including job classifications);

13. Personnel files; and

14. Current certificate of insurance.

C. Judgment be entered in favor of the Plaintiffs and against Kingdom Chevrolet for all contributions, elective deferrals, liquidated damages, and interest revealed by the payroll compliance audit conducted on Kingdom Chevrolet's records, along with the costs of said audits;

D. This Honorable Court enter an order requiring Kingdom Chevrolet to complete and return the 2026 401(k) salary-testing questionnaire/spreadsheet and produce all payroll, compensation, elective-deferral, employee-status, and related records necessary for the 401(k) Plan to complete its 2026 salary testing;

E. Kingdom Chevrolet be ordered to pay the reasonable attorneys' fees and costs incurred by Plaintiffs pursuant to the CBAs, the Funds' Trust Agreements, the 401(k) Trust Agreement,

and 29 U.S.C. § 1132(g)(2)(D); and

F.     That Plaintiffs have such other and further relief as the Court may deem just and equitable all at Kingdom Chevrolet's cost, pursuant to 29 U.S.C. § 1132(g)(2)(E).

<u>**COUNT II**</u>
<u>**BREACH OF CONTRACT - SOUTH CHICAGO DODGE CHRYSLER JEEP, INC.**</u>

35.     Plaintiffs re-allege the allegations contained in Paragraphs 1-34 of this Complaint with the same force and effect as if fully set forth herein.

36.     South Chicago Dodge failed to transmit elective deferrals it deducted from its employees' wages for work performed in the month of February 2026 by the March 15, 2026 due date. As a result, South Chicago Dodge is liable for $1.25 in 401(k) liquidated damages and $0.13 401(k) interest.

37.     The Funds have sought to conduct a payroll compliance audit of South Chicago Dodge for the period of January 1, 2022 through its cessation of operations on or about February 12, 2026.

38.     In addition, the Funds requested that South Chicago Dodge complete the 2026 401(k) salary-testing questionnaire/spreadsheet for its workforce.

39.     Despite several demands, South Chicago Dodge has failed to produce all records requested by the Funds' auditor and has refused to return a completed 401(k) salary-testing questionnaire/spreadsheet.

40.     South Chicago Dodge's refusal to pay the 401(k) liquidated damages and interest for March 2026 and its refusal to provide records required to complete the close-out audit and the 2026 401(k) salary-testing questionnaire/spreadsheet constitute breaches of the CBAs, Participation Agreements and Trust Agreements.

41.     Plaintiffs have been required to employ the undersigned counsel to collect the known audit

deficiencies and to compel South Chicago Dodge's compliance with the payroll compliance audit and 401(k) salary testing.

42. South Chicago Dodge is obligated to pay the reasonable attorneys' fees and court costs incurred by the Funds pursuant to the CBAs, their respective Trust Agreements, the Collection Policies, and 29 U.S.C. §1132(g)(2)(D).

**WHEREFORE**, the Funds respectfully request that:

A. Judgment be entered in favor of the Funds and against South Chicago Dodge for $1.25 in 401(k) liquidated damages and $0.13 401(k) interest for its late payment of elective deferrals deducted during the February 2026 work month;

B. This Honorable Court enter an order requiring South Chicago Dodge to comply with a payroll compliance audit for the period of January 1, 2022 through its cessation of operations, including the production of the following records for that period:

1. Payroll registers, earning cards and time cards;

2. Quarterly Federal (Form 941) and Illinois (Form IL-941) payroll tax returns, as well as any other states reported to;

3. Quarterly Illinois (Form UC-3/40) and annual Federal (Form 940) unemployment tax returns;

4. U.S. wage and tax statements - Forms W-2 and W-3;

5. U.S. information returns - Forms 1099 and 1096;

6. Cash disbursements journals or check register;

7. General ledgers;

8. Federal income tax returns - Forms 1120 or 1120S (Corporation) 1065

(Partnership) or 1040, Schedule C (Sole Proprietorship);

9.      Invoices, cancelled checks, receipts, and other support for selected cash disbursements;

10.     Other union benefit fund reporting reports;

11.     Affiliated company records, if any;

12.     Employee listings (including job classifications);

13.     Personnel files; and

14.     Current certificate of insurance.

C.     Judgment be entered in favor of the Plaintiffs and against South Chicago Dodge for all contributions, elective deferrals, liquidated damages, and interest revealed by the payroll compliance audit conducted on South Chicago Dodge's records, along with the costs of said audits;

D.     This Honorable Court enter an order requiring South Chicago Dodge to complete and return the 2026 401(k) salary-testing questionnaire/spreadsheet and produce all payroll, compensation, elective-deferral, employee-status, and related records necessary for the 401(k) Plan to complete its 2026 salary testing;

E.     South Chicago Dodge be ordered to pay the reasonable attorneys' fees and costs incurred by Plaintiffs pursuant to the CBAs, the Funds' Trust Agreements, the 401(k) Trust Agreement, and 29 U.S.C. § 1132(g)(2)(D); and

F.     That Plaintiffs have such other and further relief as the Court may deem just and equitable all at South Chicago Dodge's cost, pursuant to 29 U.S.C. § 1132(g)(2)(E).

## COUNT III
## BREACH OF CONTRACT - WESTERN AVENUE NISSAN, INC.

43. Plaintiffs re-allege the allegations contained in Paragraphs 1-42 of this Complaint with the same force and effect as if fully set forth herein.

44. A payroll compliance audit of Western Avenue Nissan's payroll books and records for the period of July 1, 2019 through December 31, 2024 revealed that Western Avenue Nissan failed to pay contributions to the Pension Fund and Welfare Fund, which resulted in liquidated damages, interest and audit fees, in the total amount of $95,776.38, as itemized below:

| Welfare Fund: | | Pension Fund: | |
|---|---|---|---|
| Contributions | $41,052.00 | Contributions | $20,918.00 |
| Liquidated Damages | $4,105.20 | Liquidated Damages | $2,091.80 |
| Interest | $17,352.86 | Interest | $8,620.52 |
| Audit Fee | $818.00 | Audit Fee | $818.00 |
| **Total Welfare Fund** | **$63,328.06** | **Total Pension Fund** | **$32,448.32** |

(A redacted copy of the payroll compliance audit is attached as **Exhibit 15**).

45. Despite multiple demands, Western Avenue Nissan has refused to pay the outstanding deficiencies revealed by the July 1, 2019 through December 31, 2024 audit.

46. The Funds have sought to conduct a payroll compliance audit of Western Avenue Nissan for the period of January 1, 2025 through its cessation of operations on or about February 12, 2026.

47. In addition, the Funds requested that Western Avenue Nissan complete the 2026 401(k) salary-testing questionnaire/spreadsheet for its workforce.

48. Despite several demands, Western Avenue Nissan has failed to produce all records requested by the Funds' auditor and has refused to return a completed 401(k) salary-testing questionnaire/spreadsheet.

49. Western Avenue Nissan's refusal to pay the deficiencies revealed by the July 1, 2019 through December 31, 2024 audit and its refusal to provide records required to complete

the close-out audit and the 2026 401(k) salary-testing questionnaire/spreadsheet constitute breaches of the CBAs, Participation Agreements and Trust Agreements.

50. Plaintiffs have been required to employ the undersigned counsel to collect the known audit deficiencies and to compel Western Avenue Nissan's compliance with the payroll compliance audit and 401(k) salary testing.

51. Western Avenue Nissan is obligated to pay the reasonable attorneys' fees and court costs incurred by the Funds pursuant to the CBAs, their respective Trust Agreements, the Collection Policies, and 29 U.S.C. §1132(g)(2)(D).


**WHEREFORE**, the Funds respectfully request that:

A. Judgment be entered in favor of the Funds and against Western Avenue Nissan for the $95,776.38 in contributions, liquidated damages, interest and audit fees revealed by the audit conducted for the period of July 1, 2019 through December 31, 2024;

B. This Honorable Court enter an order requiring Western Avenue Nissan to comply with a payroll compliance audit for the period of January 1, 2025 through its cessation of operations, including the production of the following records for that period:

1. Payroll registers, earning cards and time cards;

2. Quarterly Federal (Form 941) and Illinois (Form IL-941) payroll tax returns, as well as any other states reported to;

3. Quarterly Illinois (Form UC-3/40) and annual Federal (Form 940) unemployment tax returns;

4. U.S. wage and tax statements - Forms W-2 and W-3;

5. U.S. information returns - Forms 1099 and 1096;

6.      Cash disbursements journals or check register;

7.      General ledgers;

8.      Federal income tax returns - Forms 1120 or 1120S (Corporation) 1065 (Partnership) or 1040, Schedule C (Sole Proprietorship);

9.      Invoices, cancelled checks, receipts and other support for selected cash disbursements;

10.    Other union benefit fund reporting reports;

11.    Affiliated company records, if any;

12.    Employee listings (including job classifications);

13.    Personnel files; and

14.    Current certificate of insurance.

C.      Judgment be entered in favor of the Plaintiffs and against Western Avenue Nissan for all contributions, elective deferrals, liquidated damages, and interest revealed by the payroll compliance audit conducted on Western Avenue Nissan's records, along with the costs of said audits;

D.      This Honorable Court enter an order requiring Western Avenue Nissan to complete and return the 2026 401(k) salary-testing questionnaire/spreadsheet and produce all payroll, compensation, elective-deferral, employee-status, and related records necessary for the 401(k) Plan to complete its 2026 salary testing;

E.      Western Avenue Nissan be ordered to pay the reasonable attorneys' fees and costs incurred by Plaintiffs pursuant to the CBAs, the Funds' Trust Agreements, the 401(k) Trust Agreement, and 29 U.S.C. § 1132(g)(2)(D); and

F.      That Plaintiffs have such other and further relief as the Court may deem just and equitable

all at Western Avenue Nissan's cost, pursuant to 29 U.S.C. § 1132(g)(2)(E).

Respectfully Submitted,

**AUTOMOBILE MECHANICS' LOCAL NO. 701, UNION AND INDUSTRY PENSION FUND,** *et al.*

By:    /s/ Spencer J. Garner - 6349089
One of Plaintiffs' Attorneys
Spencer J. Garner
JOHNSON & KROL, LLC
141 W Jackson Boulevard, STE 2055
Chicago, Illinois 60604
(312) 320-9420
garner@johnsonkrol.com

Page 16 of 16